UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:23-CR-00111-1-JRG-CRW |
| | ) | |
| SEAN CHRISTOPHER WILLIAMS | ) | |

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Sean Christopher Williams's Pro Se Motion to Reset the Motion Deadline [Doc. 73], his Pro Se Motion to Continue Trial and All Other Deadlines [Doc. 76], and his Pro Se Motion to Request New Counsel [Doc. 80]. For the reasons herein, the Court will grant Mr. Williams's motions.

## I. BACKGROUND

In April 2021, a federal grand jury charged Defendant Sean Christopher Williams in a one-count indictment with being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1). [Indictment, Doc. 3, at 1, No. 2:21-CR-00027-1]. After his arrest, the grand jury went on to charge him in a superseding indictment with attempted escape from his place of lawful confinement, the Washington County Detention Center, in Jonesborough, Tennessee, in violation of 18 U.S.C. § 751(a), [Superseding Indictment, Doc. 43, at 1–2, No. 2:21-CR-00027-1].[1] A few weeks later, he escaped from custody while en route to the federal courthouse in Greeneville, Tennessee. [Special Agent Paul Durant's Aff., Doc. 1, at 2–3, 2:23-MJ-00220-1-CRW]. After roughly a month-long search, law-enforcement authorities found and arrested Mr. Williams in Florida and returned him to this district, where the grand jury then charged him with

---

[1] Following the grand jury's return of the superseding indictment, the United States moved to dismiss the charge under § 922(g)(1), and the Court granted the United States's motion. [Order, Doc. 59, at 7, No. 2:21-CR-00027-1].

escape from his place of lawful confinement, in violation of 18 U.S.C. § 751(a). [Second Superseding Indictment, Doc. 66, at 1–2, No. 2:21-CR-00027-1].

Mr. Williams stood trial on the charges of attempted escape and escape last month, but beforehand, the Court had found that he had knowingly and intelligently waived his Sixth-Amendment right to court-appointed counsel by "set[ting] out on an intentional path to stymie these criminal proceedings through his lack of cooperation with and his unreasonable demands of his court-appointed attorneys," all four of whom, in addition to a court-appointed private investigator, had pledged they were unable to represent Mr. Williams. [Sealed Mem. Op. & Order, Doc. 71, at 9, 11]. Mr. Williams therefore represented himself at trial, but with the assistance of his former attorney Ilya I. Berenshteyn, Esq., as his elbow counsel. The petit jury convicted him of the charge of escape but acquitted him of the charge of attempted escape. [Verdict Form, Doc. 182, at 1–2, No. 2:21-CR-00027-1].

Mr. Williams is again scheduled to stand trial this month, this time in a case in which a grand jury, in September 2023, separately charged him with three counts of sexual exploitation of a minor, in violation of 18 U.S.C. § 2251(a) and (e). [Indictment, Doc. 1, at 1–3]. He has now moved the Court to reschedule the trial date and extend all deadlines in this case, citing voluminous discovery and a need for more time to prepare pretrial motions. He has also moved the Court to appoint an attorney to represent him. Having carefully considered his motions, the Court is now prepared to rule on them.

II. ANALYSIS

The Court begins its analysis with Mr. Williams's request for counsel—a request that requires the Court to revisit its finding that Mr. Williams, through his conduct, has waived his right to appointed counsel. *See United States v. Coles*, 695 F.3d 559, 562 (6th Cir. 2012) (stating

2

Case 2:23-cr-00111-JRG-CRW   Document 89   Filed 08/15/24   Page 2 of 8   PageID #: 1470

that a point can come when "a defendant may engage in conduct which constitutes a waiver of his right to counsel" (citations omitted)). While the Court does not question its ruling that Mr. Williams—in the face of the Court's repeated warnings about the high-stakes need for him to work with his attorneys and the hazards and disadvantages of acting pro se—has waived his right to counsel through his conduct, the Court has developed concerns about how his pro-se status could affect the administration of justice in his impending trial. *See United States v. Coles*, 695 F.3d 559, 562 (6th Cir. 2012) (instructing district courts to consider "the need for the efficient and effective administration of criminal justice" when determining whether a defendant has waived his right to counsel (internal quotation mark and quotation omitted)).

The stakes for Mr. Williams are high. The child-exploitation charges could result in an effective life sentence for him, given that he appears to be a middle-aged man. *See* 18 U.S.C. § 2251(e) (requiring courts to impose a sentence of at least fifteen years and providing them with the discretion to impose a sentence of up to thirty years). The nature of these charges, the fact that they, if tried, often involve reams of digital forensic evidence and expert-witness testimony, and the lengthy sentences they carry are consequential, if not daunting, for any defendant, but more so for a pro-se defendant like Mr. Williams, who has no legal education or training of any kind.

During last month's trial, Mr. Williams's unfamiliarity with the rules of procedure and evidence, and his general lack of legal knowledge and courtroom procedure, were painfully obvious. At one point during the trial, he had attempted to admit evidence that was highly prejudicial to him and his defense—and would have done so had the Court not intervened on his behalf. His missteps during trial ought to compel him to think long and hard about the Court's prior warnings to him:

3

> [A] trained attorney would defend Mr. Williams far better than he could defend himself. Mr. Williams would act unwisely—in fact, he would act to his own detriment—if he does not make every conceivable effort to work together with his new attorney, so as to ensure that he has legal representation at trial. The Court strongly urges him not to engage in conduct—for example, the micromanagement of his own defense, particularly as it pertains to matters of legal strategy—that might compromise the attorney-client relationship between him and his new attorney, because it *will* result in his waiver of his constitutional right to an attorney if a breakdown of that relationship ensues. In short, the Court strongly urges Mr. Williams not to represent himself.

[Mem. Op. & Order, Doc. 52, at 12]. The jury's decision to acquit Mr. Williams of attempted escape was by no means a testament to his acumen in trying his own case. The United States's evidence was simply insufficient to satisfy its high burden of proof, and if Mr. Williams had elected to waive his right to a jury trial and called on the Court to render a verdict, it too would likely have found him not guilty of attempted escape.

Mr. Williams's clumsy—and near-calamitous—approach to trying his prior case, the potential effective life sentence that awaits him if convicted of the child-exploitation charges in his pending case, the surplus of digital and forensic discovery that confronts him, and the fact that he has not yet retained an expert for his defense[2] all lead the Court to conclude that the efficient and effective administration of criminal justice necessitates the appointment of counsel at this time. This newly appointed attorney will be Mr. Williams's fifth, and this appointment will offer Mr. Williams an opportunity to heed the Court's prior warnings one final time—this time in the crucible of even weightier legal proceedings and, hopefully, given his experience during last month's trial, with a newfound appreciation of his need for legal representation.

The Court, then, issues a fifth and ***final*** warning to Mr. Williams, in unmistakable terms: if he cannot work harmoniously with his next attorney and *either* he *or* his substitute attorney

---

[2] During last week's status conference, Mr. Berenshteyn informed the Court that Mr. Williams, even with the Court's allotment of CJA funds, has been unsuccessful in retaining a suitable expert to date.

inform the Court of a desire or need to dissolve their attorney-client relationship, Mr. Williams will have waived his constitutional right to an attorney and will represent himself from then on, including at his upcoming trial. Simply, "[a]t some point, when competent experienced counsel are informing the Court of their inability to continue to represent a defendant, one begins to suspect that the defendant is either irrationally hard to satisfy or, as an alternative, perhaps malingering or attempting to delay the trial." *Coles*, 695 F.3d at 561 (quotation omitted). Mr. Williams is but one attorney away from that point, and the Court's fifth and final warning to him—here in writing—creates a record that will make any future finding of waiver explicit, whether he wants to proceed pro se or not. *United States v. Johnson*, 24 F.4th 590, 603 (6th Cir. 2022) (stating that "[i]n cases where we have affirmed a district court's determination that a defendant waived his right to counsel by conduct, the district court has made the basis for the waiver explicit" and recognizing that it affirmed a district court's finding of waiver when "the district court had previously warned the defendant that this was his last appointed attorney and that if he sought another attorney, then he would proceed *pro se*").

The Court also warns Mr. Williams that it will grant no additional continuances of the trial date—which is now nearly seven months removed from its original date—beyond the continuance it is now about to grant. If Mr. Williams or his new attorney complains that their relationship has suffered an irreparable breakdown, the Court will not continue the trial, and Mr. Williams will represent himself at trial, irrespective of whether those complaints come to the Court's attention in the weeks before, days before, or even on the very morning of trial. The trial will commence as scheduled, with Mr. Williams defending himself, and any lamentations about his lack of preparedness—including any failure to issue subpoenas to witnesses—or his lack of qualifications to represent himself will not justify a continuance. Because the Court has

5

warned him—well in advance of the new trial date—that it will not countenance a motion to continue the trial, even if he is acting in a pro-se capacity, he will endure no prejudice to his defense. *See United States v. Parker*, 403 F. App'x 24, 26 (6th Cir. 2010) (recognizing that a district court's denial of a motion for a continuance of a criminal trial constitutes a due-process violation only when it "result[s] in actual prejudice to the defendant's defense"). In short, Mr. Williams must be ready for trial on the newly set date, whether by way of his new attorney's representation or his own.

Finally, the Court would be remiss if it did not, once more, warn Mr. Williams of the dangers of self-representation. He has never studied law and is not an attorney, has no real familiarity with the Federal Rules of Evidence or the Federal Rules of Criminal Procedure, is unacquainted with matters of trial strategy, and does not seem to have any understanding of the difference between relevant and irrelevant evidence. If he is unable to coexist with his new attorney and, as a consequence, must represent himself at trial, his lack of experience with the law may prove particularly problematic, if not disastrous, to his defense against the child-exploitation charges, the prosecution of which, again, often involves reams of digital forensic evidence and expert-witness testimony. Mr. Williams must understand that if he represents himself, he will be on his own. The Court cannot and will not tell him or even advise him how to try his case. It cannot and will not instruct him on the meaning or applicability of the Rules of Evidence or the Rules of Criminal Procedure, which he must abide by at all times. It cannot and will not relax those rules for his benefit.

In sum, a trained attorney would defend Mr. Williams far better than he could defend himself. Mr. Williams would act unwisely—in fact, he would act to his own detriment—if he does not make every conceivable effort to work together with his new attorney, so as to ensure

that he has legal representation at trial. The Court strongly urges him not to engage in conduct—for example, the micromanagement of his own defense, particularly as it pertains to matters of legal strategy—that might compromise the attorney-client relationship between him and his new attorney, because it *will* result in his waiver of his constitutional right to an attorney if a breakdown of that relationship ensues. In short, the Court strongly urges Mr. Williams not to represent himself.

### III.  CONCLUSION

In the interest of the efficient and effective administration of criminal justice, the Court will appoint a fifth attorney to represent Mr. Williams, but this appointment, as with the Court's previous appointments, will be conditional on Mr. Williams's ability to maintain a harmonious relationship with his new attorney—the absence or deterioration of which *will* result in the waiver of his constitutional right to counsel for a second and final time. The Court therefore **ORDERS** as follows:

1. Mr. Williams's Pro Se Motion to Request New Counsel [Doc. 80] is **GRANTED**;

2. Mark E. Brown, Esq., a member in good standing of the Knoxville CJA panel, is hereby **APPOINTED** to represent Mr. Williams;

3. Mr. Williams's Pro Se Motion to Reset the Motion Deadline [Doc. 73] and Pro Se Motion to Continue Trial and All Other Deadlines [Doc. 76] are **GRANTED**;

4. The trial date is hereby **RESET** for Tuesday, October 22, 2024, at 10:00 a.m. All time between the filing of this Order and the new trial date is excludable time under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq*. Mr. Williams's

pretrial motions are due by Tuesday, September 17, 2024. The United States's responses are due by Tuesday, September 24, 2024. The plea deadline is Tuesday, October 8, 2024. Any requests for special jury instructions are due five days before the trial date;

5. Mr. Berenshteyn is hereby **RELIEVED** of his duties as Mr. Williams's elbow counsel; and

6. The Clerk of Court is **DIRECTED** to mail a copy of this memorandum opinion and order to the address on file for Mr. Williams.

So ordered.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
