IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | Case No. 2:21-cr-00027 |
| | ) | Case No. 2:23-cr-00111 |
| SEAN CHRISTOPHER WILLIAMS, | ) | JUDGE GREER |
| | ) | Magistrate Judge Wyrick |
| Defendant. | ) | |

## SENTENCING MEMORANDUM AND MOTION FOR VARIANCE BY THE DEFENDANT SEAN CHRISTOPHER WILLIAMS

COMES the Defendant Sean Christopher Williams ("Williams") by and through counsel and submits this Sentencing Memorandum for Case Nos. 2:21-cr-00027 and 2:23-cr-00111. Williams also moves this Court for a variance from the sentencing guidelines as calculated by the United States Probation Office as the total guideline range combining both cases is excessive and does not comply with the purpose of 18 U.S.C. §3553(a)

### INTRODUCTION

Williams is before this Court for sentencing following convictions in two (2) separate cases, Case Nos. 2:21-cr-00027 and 2:23-cr-00111. As this Court is fully aware, Williams was charged in Case No. 2:21-cr-00027 on November 15, 2023, with Attempted Escape from Federal Custody, on or about July 23, 2023; and Escape from Federal Custody on or about October 18, 2023. On July 26, 2024, Williams was found guilty on the charge of Escape from Federal Custody. He was acquitted on the Attempted Escape charge. That conviction carries a maximum sentence of 60 months (5 years).

On September 12, 2023, Williams was charged in Case No. 2:23-cr-00111 with three (3) counts of Using a Minor to Engage in Sexually Explicit Conduct for the Purpose of Producing a

Visual Depiction. The Indictment charged three (3) separate dates: January 20, 2009; May 20, 2020; and December 23, 2020. The Indictment was superseded on September 20, 2024. The date of the offense in Count 1 was changed to on or about June 2008 to June 2009. The other counts remained the same.

On November 14, 2024, Williams was found guilty on all three (3) counts. The Presentence Report specifies in great detail the offense conduct for both cases and there is no benefit in repeating the facts here when the court is familiar with both cases.

## PRESENTENCE REPORT

Williams' Presentence Report was filed on January 14, 2025. Williams' total guideline term of imprisonment when combining the sentences for both cases is 1140 months or 95 years. As set forth herein, that Guideline range is excessive and fails to achieve the purposes of 18 U.S.C. §3553(a). The convictions in the 23-cr-00111 case require a mandatory minimum of 15 years and a maximum term of 30 years. Those are stacked to run consecutive to each other so at the maximum Williams faces 1080 months or 90 years on those charges alone. Even if he were to receive the mandatory minimum of 15 years that would equate to 540 months or 45 years. Given his current age of 53, regardless of the sentence imposed in this case, Williams faces an effective life sentence. He still has pending charges in other districts including the Western District of North Carolina and Washington County Circuit Court.

## LEGAL STANDARD

Since the United States Supreme Court rendered the sentencing guidelines as advisory in *United States v.* Booker*,* 543 U.S. 220 (2005), a sentencing court has discretion to fashion a sentence that complies with the sentencing statute in 18 U.S.C. §3553(a). Here the Court does not need to impose a term of 1140 months to achieve the purposes of the statute.

In imposing a sentence, a court employs a three-step methodology. *United States v. McElheney*, 630 F. Supp. 2d 886, 888 (E.D. Tenn. 2009). "As a first step the Court determines the proper advisory Guidelines range." *Id*. (citing, *Gall vs. United States,* 128 S. Ct. at 596). "To make this determination, the Court will have to resolve objections to the PSR's Guidelines calculations as well as any factual disputes." *Id*. "The second step requires the Court to determine, whether, pursuant to the United States Sentencing Guidelines Manual, any departures from the advisory Guidelines range apply." *Id*. "The court considers arguments and motions filed by the parties for upward and downward departures under the Guidelines or the Sentencing Commission's policy statements." *Id*.

"After the Court has determined the proper Guidelines range and decided the appropriateness of any departures, the Court must identify the appropriate sentence in light of the factors set forth in 18 U.S.C. §3553(a)." *Id*. "This is based on an individualized assessment based on the facts presented." *Id*. "The court may impose a sentence within the applicable Guidelines range…if such is consistent with the Court's consideration of the §3553(a) factors or impose a non-Guidelines sentence if such is justified by the §3553(a) factors." *Id* at 888 – 889.

Section 3553(a) is a broad command to the Court to impose a sentence sufficient but not greater than necessary to achieve the purposes of 18 U.S.C. §3553(a)(2). In doing so, this Court must consider the nature and circumstances of the offense and the history and characteristics of the Defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; afford adequate deterrence to criminal conduct; protect the public from further crimes of the defendant; and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. *18 U.S.C. §3553(a)(2) (West 2025)*. Courts also consider the kinds of sentences

available; the kinds of sentence and sentencing range established for the applicable category of defendant; any pertinent policy statements; the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense. *18 U.S.C. §3553(a)(3), (a)(4), (a)(5), (a)(6)* and *(a)(7) (West 2025)*.

While the Court must still correctly calculate the applicable guideline range, *Gall*, 552 U.S. at 49 (2007), it may not treat that range as mandatory or even presumptive. *Gall,* 552 U.S. at 51; *Nelson v. United States*, 555 U.S. 350, 352 (2009). The guideline range must be treated as "one factor among several" to be considered when fashioning an appropriate sentence under §3553(a). *Kimbrough v. United States*, 552 U.S. 85, 90 (2007). The Court must "consider all of the §3553(a) factors," [and] "make an individualized assessment based on the facts presented." *Gall,* 552 U.S. at 49 – 50. The Court must then explain how the facts relate to the purposes of sentencing. *Id*. at 53 – 60; *Pepper v. United States*, 131 S. Ct. at 1242 – 43.

A component of United States Supreme Court precedent, designed to ensure that the guidelines are truly advisory and constitutional, is the authority of the court to disagree with a guideline as a matter of policy. As the Court said in *Kimbrough*, because "the Guidelines are now advisory…as a general matter, courts may vary [from Guidelines ranges] based solely on policy considerations, including disagreements" with the Guidelines themselves. *Kimbrough*, 552 U.S. at 101 – 102 (citing, *Rita v. United States*, 551 U.S. 338, 351 (2007) (finding that district courts may find the "Guidelines sentence itself fails to properly reflect §3553(a) considerations").

Congressionally directed guidelines are just as advisory as any other guideline and therefore equally subject to policy-based variances. This has been recognized in the Sixth Circuit which found in *United States v. Michael*, 576 F.3d 323, 327 (6th Cir. 2009) that "all of the

4

Case 2:23-cr-00111-JRG-CRW   Document 166   Filed 02/10/25   Page 4 of 13
PageID #: 3721

sentencing guidelines are advisory" including those directed by Congress. Congressional directives "tell[] the Sentencing Commission, not the courts, what to do" and "a directive that the Commission specify a particular Guidelines range not is not a mandate that sentencing courts stay within it." *Michael*, 576 U.S. at 328.

This Court may therefore properly find that the child pornography guidelines were not developed by the Sentencing Commission in its characteristic institutional role of basing its determinations on empirical data and national experience. *Kimbrough*, 552 U.S. at 109 – 110. The Supreme Court has repeatedly recognized that when a guideline was not developed by the Sentencing Commission based on empirical data of past sentencing practices and national sentencing experience, it is not likely that the guideline "reflect[s] a rough approximation of sentences that might achieve §3553(a)'s objectives," and that a policy-based variance from such a guideline is not subject to "closer review" and is "not suspect." *See Kimbrough*, 552 U.S. at 109 – 110; *Spears v. United States*, 552 U.S. 261, 264 (2009); *Rita*, 551 U.S. at 348, 349 – 350.

There is also no limit to what a court may consider in deciding whether a variance from the Sentencing Guidelines is appropriate. That includes areas that the sentencing guidelines have specifically excluded. In *Rita v. United States*, 551 U.S. 336, 363 (2007), the Supreme Court wrote "[T]he commission has not developed any standards or recommendations that affect sentencing ranges for may individual characteristics. Matters such as age, education, mental or emotional condition, medical condition (including drug and alcohol addiction), employment history, lack of guidance as a youth, family ties, or military, civil, charitable, or public service are not ordinarily considered under the Guidelines. See, U.S.S.G. Manual §§5H1.1 – 6, 11, 12 (Nov. 2006). These are, however, matters that §3553(a) authorizes the sentencing judge to consider. See, e.g., 18 U.S.C. §3553(a)(1)". "It is fair to assume that the Guidelines, insofar as practicable, reflect a rough

approximation of sentences that might achieve §3553(a)'s objectives. The sentencing judge may take into consideration that the Guidelines sentence should not apply because the Guidelines sentence itself fails properly to reflect §3553(a) considerations." *Id*. at 350.

**APPLICATION OF THE §3553(a) FACTORS AND REQUESTED SENTENCE**

In this case, a sentence combining all the offenses in the 23-cr-00111 case at the maximum of 30 years each to run concurrently to each other and then imposing a maximum 60-month sentence in the 21-cr-00027 case consecutive to those equates to a sentence at the top range of 420 months or 35 years. That sentence is sufficient to satisfy the §3553(a) factors and remains – at Mr. Williams' age – an effective life sentence. He would be well into his 80s upon release. Mr. Williams will also have to register as a sex offender, and be subject to a lifetime of supervised released. If released in his 80s, an elderly sex offender likely faces a difficult time adjusting to life outside of prison such that his punishment is going to be ongoing. In this rapidly changing wireless world, where technology has become an integral part of life, Williams faces challenges upon release that cannot currently be comprehended.

**1. Nature and Circumstances of the Offense and History and Characteristics of the Defendant**

Clearly, from a human standpoint the child pornography offenses for which Williams was convicted are extremely serious offenses. There is no reasonable justification for exploiting children in that fashion and clearly the photographs introduced into evidence at trial are horrific and any reasonable human being would be offended by those photographs. In short, this is a crime that deserves serious punishment. But in fashioning a sentence in this case, the Court must also be mindful of the Supreme Court's admonition that a sentencing judge must consider every convicted person as an individual and "every case as a unique study in the human failings that sometimes mitigate, sometimes magnify the crime and punishment to ensue." *Rita*, 551 U.S. at

6

338. And here given Williams' background it does not take much detective work to understand why he became an abuser.

Studies have shown that those that are abused will most likely become abusers themselves. And that's exactly what happened to Williams. See, *Santosky v. Kramer*, 455 U.S. 745, 789 (1982) (Rehnquist, J, joined by Berger, C.J., White and O'Connor, J. dissenting) ("It requires no citation of authority to assert that children who are abused in their youth generally face extraordinary problems developing into responsible, productive citizens"). Guideline sections U.S.S.G. §§5H1.12 and 5K2.0(d)(1) treat lack of guidance as a youth and circumstances indicating a disadvantaged upbringing as not proper grounds for departure. However, since *Booker* rendered the Guidelines advisory, district courts are free to consider these factors as part of the §3553(a) analysis; *See also, United States v. McBride*, 511 F. 3d 1293 (11th Cir. 2007) (finding that the district court properly based defendant's sentence on §3553(a) factors, including the murder of the defendant's father, severe physical abuse defendant suffered at the hands of mother and uncle, sexual abuse he suffered by grandfather, and having been shuffled between foster homes until adulthood).

Williams' parents divorced when he was of elementary school age. His mother was awarded full custody, but his mother made a very poor decision that seems to have altered Williams' life. His mother eventually remarried but by doing so she introduced an abusive stepfather into Williams' life. He exposed Williams to drugs and alcohol when he was just eight (8) years old. His stepfather was also physically abusive.

Williams' home life with his mother and stepfather was so difficult that he was placed in foster care by the Department of Children's Services. But being in foster care hardly provided a stable environment. His foster mother was also physically abusive. Williams fathered a child at

7

Case 2:23-cr-00111-JRG-CRW   Document 166   Filed 02/10/25   Page 7 of 13
PageID #: 3724

age 13 but has very little to no contact with her today. Williams has never been married and appears to have never had a stable living environment. He reports being in a current relationship but that appears unlikely to survive a federal prison sentence.

Williams suffers from mental and emotional problems and could use a mental health evaluation and appropriate treatment while in the custody of the Bureau of Prisons. Williams should also receive treatment afforded by the BOP for sex offenders. Williams describes himself as a "social drinker". But as part of his difficult childhood, his abusive stepfather provided him with alcohol when he was just eight (8) years old. His stepfather also exposed him to marijuana, which he used daily until several years ago. In 2018 or 2019, Williams became a daily user of cocaine. Williams has also experimented with crack cocaine, ecstasy and LSD which his stepfather also introduced him to at eight (8) years old. Williams reports becoming a frequent user of LSD, a hallucinogenic drug. Williams ran away from the abuse was suffering and quit school in the 7th grade. He does however hold a verified GED.

Despite his childhood, Williams became a successful businessman starting a window cleaning company at 19 years old. The company became a general contracting business known as Glass and Concrete Contracting, LLC. Williams parlayed his business success into a lifestyle that included ownership of several luxury vehicles, several condominiums and a parking garage in downtown Johnson City. All of that – like the rest of his life – is now gone.

## **2.** **Need for the Sentence Imposed**

The Court must also consider the need for the sentence imposed to (1) reflect the seriousness of the offense, promote respect for the law, and to provide just punishment for the offense; (2) afford adequate deterrence to criminal conduct, (3) protect the public from further crimes of the defendant, and (4) provide the defendant with needed education or vocational

training, medical care, or other correctional treatment in the most effective manner. *18 U.S.C. §3553(a)(2)*.

There is no question that the offense in this case is serious and exploitive to some of the most vulnerable in society. Children of that age are easily manipulated and lack the sophistication to know what is occurring. The images while difficult to view and horrific in nature were not – as in the case of many offenses of this type – circulated on the internet but rather contained to devices within Williams' possession. It does call for a significant sentence, but not one that spans 95 years.

Williams is facing a significant sentence regardless of the time imposed by this Court which will certainly afford adequate deterrence to any conduct of this type in the future and protect the public from any further crimes of Williams. He also faces pending charges in Washington County, Tennessee and the United States District Court for the Western District of Tennessee. Williams can use a mental health evaluation and treatment while in custody of the Bureau of Prisons along with taking advantage of any other programs the BOP may offer.[1] If Williams receives a sentence of 1140 months, there is no incentive for him to participate in any programs that would help him better himself and he would essentially be sitting in a storage facility waiting to die. In this respect a sentence of 1140 months renders the §3553(a) factors meaningless. Certainly, punishment is warranted but 95 years goes beyond punishment to such an extreme that the §3553(a) factors become irrelevant.

**3.    The Kinds of Sentences Available**

The Court must also consider the "kinds of sentences available." *18 U.S.C. §3553(a)(3)*.

---

[1] Williams told probation (and it is noted in the PSR) that he does not need substance abuse treatment. Counsel respectfully disagrees and requests this Court as part of its judgment refer Williams to the Bureau of Prisons Residential Drug Abuse Program (RDAP).

9

Williams was found guilty of three (3) offenses which carry a mandatory minimum sentence of 15 years and a maximum sentence of 30 years. In addition, he faces a sentence of up to 60 months on the escape charge. Williams also faces a term of supervised release of up to 3 years on the escape charge and a term of five years to life on the child exploitation offenses. Probation is expressly precluded by statute. All terms of supervised release should run concurrently as the one for the child exploitation offenses will far exceed the one for the escape charge.

Williams must also register pursuant to the Federal Sex Offender Registration and Notification Act (SORA), codified in 18 U.S.C. §§3563 and 3583. SORNA was enacted by Congress in 1996 as part of the Adam Walsh Act. It sets forth minimum standards for all jurisdictions including stipulations on where an offender must register, how frequently he must register, and how long they must remain on the registry. States must agree to all of the provisions of SORNA or risk losing federal funding. This Court has adopted a standing order which provides that a defendant must participate in a program of sex offender mental health treatment at his own expense until discharged, comply with the policies and procedures of the treatment program, waive any and all rights to confidentiality, and authorize open communication between the probation officer and any treatment provider. (See, Standing Order 15-06(1) referenced in Williams' PSR).

In short Williams, if released, will be on a very short leash and any violation will be severely punished with a likely return to prison.

**4.    The Kinds of Sentence and the Sentencing Range Established for Williams' Offense**

Under §3553(a), the Court must also consider the kinds of sentences available and the sentencing range established for…the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." *18 U.S.C. §3553(a)(4)(A)*.

10

Case 2:23-cr-00111-JRG-CRW    Document 166    Filed 02/10/25    Page 10 of 13
PageID #: 3728

The applicable guidelines are set forth in the PSR. Williams has not objected to the total guideline range of 1140 months and instead requests a variance from the Guidelines.[2] As noted above, however, the guideline range is excessive and does not achieve the goals of sentencing. A sentence of 35 years would satisfy the §3553(a) factors and still be an effective life sentence as Williams is 53-years old.

### 5. Pertinent Policy Statement

It does not appear that any policy statements in the guidelines are relevant to Williams' sentencing. The policy statements on age, and background should be part of the §3553(a) analysis as Williams is not requesting a departure under the provisions of the guidelines. Instead, based on reasoning in United States Supreme Court opinions, Williams is asking this Court to consider everything including his age and lack of guidance as a youth in granting a variance and fashioning an appropriate sentence.

### 6. The Need to Avoid Unwarranted Sentencing Disparities

This factor requires the court to consider sentencing disparities among defendants with similar records who have been found guilty of similar conduct. *18 U.S.C. §3553(a)(6)*. On this factor, Williams points to Part 5 of the PSR and specifically paragraphs 150 and 151. According to the U.S. Sentencing Commission's Judiciary Sentencing Information (JSIN) during the last five fiscal years (2019 – 2023) there were 824 defendants whose primary sentencing guideline was §2G2.1 with a final offense level of 43, and a Criminal History Category of I.[3] The average length of imprisonment was 348 months, and the median sentence was 360 months. Clearly, a sentence

---

[2] The one objection to the calculation of Williams' guidelines has no effect on the overall guidelines' range.
[3] The Sentencing Guidelines Table provides that Offense Level 43 with a Criminal History Category of I equals a Guidelines' sentence of Life Imprisonment, illustrating that Courts have – in the proper circumstances – granted variances.

11

of 1140 months is out of line with those averages. However, a sentence of 420 months (35 years) is within the same range and still properly reflects the seriousness of these offenses.

### 7. The Need to Provide Restitution

The final factor in the §3553(a) analysis requires the court to consider the need to provide restitution to any victims of the offense. *18 U.S.C. §3553(a)(7)*. Only Travelers Insurance Company in Case No. 21-cr-00027 has requested restitution in the amount of Five Thousand Seven Hundred Forty-Two Dollars and Seventy-Six Cents ($5,742.76). The Court has the discretion under 18 U.S.C. §3663 to award restitution as it deems appropriate.

## PENDING CHARGES

Williams has pending charges in Washington County, Tennessee Criminal Court Docket Nos. 49570 and 49571. Williams agrees with the PSR that those charges are relevant conduct to the child exploitation offenses as they involve the same victims and should run concurrently. The Court also has the discretion to run those currently to the sentence for Case No. 21-cr-00027.

Williams also has pending charges in the United States District Court for the Western District of North Carolina (Docket Nos. 1:23-cr-61-MR-WCM-1 and 1:23-cr-83-MR-WCM-1) which the PSR states are not relevant conduct to this offense. Likewise, the PSR states that pending charges in Washington County Criminal Court Docket No. 49572 is not relevant conduct. Again, the Court has discretion to order these sentences will run concurrently to any convictions in those cases. Williams respectfully requests this Court order all pending charges run concurrently as no matter the sentence in this case, Williams will most likely never been released from prison. *See, Setser v. United States*, 132 S. Ct. 1463, 1468 (2012).

## DESIGNATION REQUEST

Williams has been provided with information regarding potential locations within the Bureau of Prisons to serve his sentence by counsel. Counsel anticipates requesting a designation be included as part of the final judgment in both cases at the Sentencing Hearing on February 24th.

Respectfully submitted this 10th day of February 2025

/s/ Mark E. Brown
Mark E. Brown (BPR #021851)
MENEFEE & BROWN, P.C.
2633 Kingston Pike, Ste. 100
Knoxville, Tennessee 37919
Phone: (865) 357-9800
Fax: (865) 357-9810
e-mail: mbrown@menefeebrown.com

*Attorney for the Defendant Christopher Sean Williams*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of February 2025, a true and exact copy of this document has been served via this Court's electronic filing system. Service is made on all parties appearing on this Court's electronic service certificate. All parties in interest may access this pleading via ECF.

/s/ Mark E. Brown
Mark E. Brown